# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:08cv485

| | | |
|---|---|---|
| HARRY WAYNE FRANCIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 13].

## I.    PROCEDURAL HISTORY

The Plaintiff Harry Wayne Francis filed an application for supplemental security income benefits on January 4, 2005, alleging that he had become disabled as of December 20, 2004. [Transcript ("Tr.") 60-62]. The Plaintiff's application was denied initially and on reconsideration. [Tr. 46-48, 42-44]. A hearing was held before Administrative Law Judge ("ALJ") Richard L. Schwarz on December 10, 2007. [Tr. 725-769]. On January 16, 2008, the ALJ issued

a decision denying the Plaintiff benefits.  [Tr. 15-26].  Inadvertencies in filing

[Doc. 12-2] resulted in the Appeals Council's consideration of two appeals,

including one submission of additional evidence which the Council did add to

the record [Tr. 9].  It denied the Plaintiff's request for review, thereby making

the ALJ's decision the final decision of the Commissioner.  [Tr. 6-8].  The

Plaintiff has exhausted his available administrative remedies, and this case

is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to

(1) whether substantial evidence supports the Commissioner's decision, see

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971), and (2) whether the Commissioner applied the correct legal

standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court

does not review a final decision of the Commissioner de novo.  Smith v.

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The  Social  Security  Act  provides  that  "[t]he  findings  of  the

[Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined

"substantial  evidence"  as  "more  than  a  scintilla  and  [doing]  more  than

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id. In this case, the ALJ's determination was made at the fifth step.

## IV.    FACTS AS STATED IN THE RECORD

The Plaintiff was born on  August 21, 1955 and was 52 years old at the time of the ALJ's hearing.  [Tr. 729, 26].  The Plaintiff graduated high school and completed 2000 course hours to obtain a cosmetology degree.  [Tr. 729]. His past relevant work is in cosmetology as a hairdresser.  [Tr. 24].

Plaintiff asserted that his disabling impairments were heart problems, high blood pressure, diabetes, back pain, right shoulder and hand pain, carpal tunnel syndrome in his left hand, a right leg that "gives out on" him, depression, anxiety and panic attacks, restless leg syndrome, sequelae from subdural hematoma in 1983 including right hand freezing, right leg giving out, and constant dull pain in the right neck, shoulder, buttocks and thigh [T. 734, 735, 742, 746, 748, 758, 760].

Plaintiff's hearing testimony was as follows: His job involved lifting 30 to 45 pound boxes of supplies once or twice each month. [Tr. 733-734]. He stopped working when he developed heart problems and was hospitalized. [Tr. 733]. He made one work attempt, in February 2005, but did not complete a week. [Tr. 733].

Since his hospitalization, he has had constant chest pain, in the center of his chest sometimes radiating to the right. [Tr. 735]. Walking 100 yards slowly, he estimates, would make him out of breath. [Tr. 738] He tries to walk as much as possible for exercise since developing heart problems. [Tr. 739]. He will feel fatigued and slow down during this. [Tr. 736]. He becomes short of breath easily and has no energy. [Tr. 738]. When he bends to put on shoes and socks, he is out of breath. [Tr. 738]. His breathing difficulties

increase with anxiety.  [Id.].  He can stand for five to seven minutes before having to sit down.  [Tr. 739].  When he sits, he shifts from side to side because his legs become numb and tingle. [Id.].  During a 2005 trip to Florida, he tried to ride a bicycle about six blocks, but had to call 911 when he got home because of chest pain and breathing problems.  [Tr. 740].  He went to the emergency room in July 2007 after trying to mow a lawn with a push mower.  [Tr. 741].

He takes Lasix for fluid building from cardiomyopathy.  [Tr. 741].  Prior to obtaining Medicaid benefits, he could not always pay for, and take, his medications, but he is compliant now.  [Tr. 742].  Some medications he is to take in the morning sedate him and sap his energy.  [Tr. 744-745].  He takes 2-3 hour naps several days per week. [Tr. 745].  He goes to bed around 10:30 to 11:00 p.m., but awakens at 2:00 a.m. because of things on his mind.  [Tr. 745].

His right side is weak, and he has pain in his right shoulder, neck, buttocks and thigh.  [Tr. 746].  Low back pain goes down his right leg.  [Tr. 747].  Sometimes his right leg buckles, and his legs feel weak.  [Id.].  His right leg becomes stiff in cold weather.  [Tr. 748].  He testified that he has left hand

carpal tunnel syndrome that causes cramping in his hand.[1]  [Id.].  He cannot

raise his right arm above shoulder level.  [Tr. 749].  He has not learned to use

his left hand in compensation for right-hand functions he cannot do.  [Tr. 750].

He is an insulin dependent diabetic, and the diabetes is uncontrolled.  [Id.].

He attributes fecal incontinence during sleep and exertion to the diabetes.  [Tr.

751].  He puts toilet paper in his underwear as protection against accidents.

[Tr. 752].

Depression causes his temper to flare.  [Tr. 743].  He feels anxious and

claustrophobic.  [Tr. 743].  He cannot interact well with others now and does

not want to spend time with people.  [Tr. 752-753].  He does not like crowds,

and becomes sharp and snappy with people.  [Tr. 754].  His psychiatric

medications cause troubling side effects, including anger, agitation, and

unusual sexual desires.  [Tr. 744].  He has panic attacks 4-5 times per day,

mostly when he is in enclosed spaces or frustrated over things he can no

longer do, such as change oil or cut grass. [Tr. 758].  During panic attacks, he

perspires, has trouble breathing, and speaks sharply to others.  [Tr. 759].  He

described a panic attack in the grocery store, wherein he had to abandon his

cart and go outside to regain control of his breathing.  [Id.].

---

[1]Further questioning revealed that Plaintiff was confused as to whether his carpal
tunnel syndrome was in his right hand or his left.  [T. 748].

He has a long history of drug and alcohol abuse, since the 1970s.  [Tr. 754].  He last used cocaine in July 2007.  [Id.].  Years ago, he was arrested for growing three marijuana plants, but the charges were dropped.  [Tr. 763-764.] He talks with mental health counselors about the substance abuse, but does not comply with their recommendations that he attend NA or AA because he feels his abstinence is sufficient.  [Tr. 754].  He used drugs to "blank out" pain and anxiety, but the depression was already there both during and after periods of substance abuse.  [Tr. 755] He smokes, but has reduced his usage from a pack and a half per day to one-half pack per day.  [Tr. 759].

His typical day starts with taking his medications, eating breakfast, watching television, and doing some cleaning.  [Tr. 757].  He takes care of some plants, and naps after taking more medication in the afternoon that makes him drowsy.  [Tr. 757-758].

Vocational expert (hereinafter, "VE") Bonnie Martindale classified Plaintiff's past work as that of a cosmetologist, classified in the Dictionary of Occupational Titles ("DOT") as light work, with an SVP of 6, indicating skilled work.  [Tr. 765].  She indicated that a person working as a cosmetologist would need very good use of the hands, especially the dominant hand.  [Tr. 765].  He has no transferable skills from his prior work.  [Id.].  The ALJ's

hypothetical posed to her was, "[I]f we were to say that he has at best average use of his hands, and just for the sake of argument, let's eliminate cosmetology type work, and if we're talking about either a medium or a light level which want to avoid any types of hazardous conditions such as working around open flames or on scaffolding or anything like that, and that if you have an ongoing problem from depression and so forth that it would have to be some relatively simple, repetitive job. Does that leave any jobs for such person with his education level of age 51 or 52?" [Tr. 765-766]. Her answer was that such a person could perform fast food work at the light level with an SVP of 2 and janitorial work at the medium level with an SVP of 2. [Tr. 766]. However, a person who slept several hours per day, unscheduled, due to health problems would not be able to perform such work because the two 15 minute breaks and 30 minute to 1 hour lunch break allowed in the workplace would not allow for such necessary napping. [Tr. 767]. Absenteeism beyond 1 1/2 to 2 days per month, such as for panic attacks, would not be allowed by an employer. [Tr. 768].

## V.    THE ALJ'S DECISION

On January 18, 2008, the ALJ issued a decision denying the Plaintiff's claim. [Tr. 18-26]. Proceeding to the sequential evaluation, the ALJ found

that the Plaintiff had not engaged in any substantial gainful activity since January 4, 2005, his application date. [Tr. 20]. The ALJ then found that the medical evidence established traumatic and degenerative joint disease with carpal tunnel syndrome, cardiomyopathy, benign renal cysts, diabetes mellitus, chronic depression, anxiety, and poly-substance abuse to be severe impairments. [Tr. 20-21]. The ALJ concluded, however, that these impairments did not, alone or in combination, meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 15]. The ALJ then assessed the Plaintiff's residual functional capacity (hereinafter, "RFC") and determined that he retains the capacity to perform a significant range of unskilled medium exertional activity, subject to postural limitations of not climbing ladders, scaffolds or rope, not lifting more than 25 pounds frequently and fifty pounds occasionally, avoiding exposure to open flames, hazardous heights and moving machinery, and inability to tolerate much stress or engage in frequent social interaction. As such, he was unable to perform his past work as a hairdresser and had no transferrable skills. At step five, the ALJ obtained vocational expert testimony and concluded that significant work existed in the national economy that Plaintiff could perform. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined

by the Social Security Act from the alleged onset date of January 4, 2005. [Tr. 26].

## VI.  DISCUSSION

Plaintiff raises three assignments of error.  First, that the ALJ erred in failing to discuss the opinion of other agencies on Plaintiff's disability. Second, that the ALJ erred in failing to evaluate depression at step four pursuant to SSR 96-8p.  Third, that the ALJ erred in relying on VE testimony that conflicted with the Dictionary of Occupational Titles.

## A.  The ALJ did not err in evaluating Plaintiff's testimony about Medicaid.

Plaintiff testified that he was approved for Medicaid in March or April of 2005. No evidence of record confirms the characterization in Plaintiff's brief that this Medicaid is the type for disabled adults, and no evidence of record confirms what, if any, medical reasoning supported his being granted Medicaid.

Plaintiff asks that this testimony be treated as other agency evidence under SSR 06-03p.  Plaintiff has the burden of proof to produce evidence of his disability at steps one through four of the five-step evaluation.  42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502.  That burden requires him to produce other-agency medical opinion evidence sufficient to trigger the ALJ's responsibilities under SSR 06-03p.

Nothing in the Court's reading of SSR 06-03p suggests that a bald assertion that he has been granted Medicaid benefits meets this burden. Plaintiff does not point to any authority indicating so.

The Court takes judicial notice of the fact that Medicaid is granted on a variety of bases, some related to disability and some not, and that the granting of Medicaid is documented in writings to which the grantee has access. Plaintiff was represented by the same counsel at the administrative hearing, before the Appeals Council, and now before this Court. If direct evidence had existed to support this bare testimony, Plaintiff had the burden and ample opportunity to have submitted it, but it is not present in the record before this Court.

Under the regulations, *decisions* by other governmental agencies as to whether someone is disabled are not binding on the Social Security Administration, but they do constitute evidence that must be considered. 20 C.F.R. §§ 404.1504, 416.904 (emphasis added). The Court holds that mere testimony that one is a Medicaid beneficiary, without more, under these circumstances is not evidence that triggers an evaluation under SSR 06-03p. Thus, the ALJ's failure to conduct such is not error.

**B.    The ALJ properly evaluated Plaintiff's RFC.**

At the fourth step of the sequential evaluation process, SSA considers its assessment of a claimant's residual functional capacity and his past relevant work. 20 C.F.R. §§ 404.1520(d)(iv). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.." SSR 96-8p. The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual. Id. at *5. Mental impairments can be non-exertional. SSR 83-14 at *2. Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, i.e., those physical limitations and restrictions that are not reflected in the seven strength demands, as well as mental limitations and restrictions. SSR 96-8p at *6. Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. SSR 85-15 at *4. Likewise, even though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands.

For example, a mental impairment may cause fatigue or hysterical paralysis. Id. at *6.

If no evidence of record supports the presence of a physical or mental limitation, the ALJ must consider the individual to have no limitation or restriction. Id. at *1. It is the Plaintiff's burden to establish his residual functional capacity; in other words, how his impairment impacts his functioning. 20 C.F.R. §416.912(c).

Plaintiff argues that the ALJ erred specifically in failing to describe the impact of his depression in terms of work-related functions. Plaintiff acknowledges that the ALJ addressed limitations from mental impairments in finding an "inability to tolerate much stress or to engage in frequent social interaction." [T. 24]. Plaintiff argues that this is confusing as a step four analysis, but does not indicate what questions this creates or leaves unanswered. Plaintiff also does not point to omitted or additional evidence of limitations from his mental impairment, depression, than that examined by the ALJ. As such, the Court concludes that ALJ's RFC determination is supported by substantial evidence.

**C.    The ALJ committed harmless error in evaluating the VE's testimony.**

Plaintiff argues that the ALJ erred at step five by ignoring two conflicts between VE testimony and the DOT.

Social Security Ruling 00-4p, on which Plaintiff relies, governs how an ALJ may use vocational expert testimony:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. Id. at *4.  The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.  SSR 00-4p at *4.

Primary reliance for information about the requirements of work in the national economy is to be upon the DOT (including its companion publication, the SCO).  Id. at *2.  The regulations at 20 CFR 404.1566(d) and 416.966(d) provide that the Secretary will take administrative notice of "reliable job information" available from various publications, including the DOT.  Id.

At the hearing, the testimony of a vocational expert was obtained.  She received three hypothetical questions from the ALJ.  [T. 766-8].  Plaintiff asserts that the ALJ's errors were made in evaluating the answer to this question:

"[Assume Plaintiff has] at best average use of his hands, [ ] eliminate cosmetology type work, [at] either a medium or light level [and] avoid any types of hazardous conditions [and] an ongoing problem from depression [so as to require] some relatively simple, repetitive job, [are there jobs for a person at] his education level of age 51 or 52?" [T. 766].

The VE responded that fast food work that is light, SVP 2 work and janitorial work at a medium level existed. Consulting the DOT listings on these occupations, fast food worker (DOT code 311.472-010) has a reasoning level of "2", a "handling" frequency of "constantly - exists more than 2/3 of the time", and a "fingering" frequency of "frequently - exists from 1/3 to 2/3 of the time." The DOT listing for janitor that Plaintiff has referenced (DOT code 381.664-010), which is one of many options arising the under generic description "janitor" used by the VE, shows a reasoning level of "3", "handling" frequency of "frequently - exists 1/3 to 2/3 of the time", and "fingering" of "frequently: exists 1/3 to 2/3 of the time."

Plaintiff first argues that only jobs with a reasoning level of one are appropriate for persons limited to "simple, routine, repetitive tasks". This argument fails. In neither his questioning of the VE nor in his decision did the ALJ find or imply that Plaintiff is limited to "simple, routine, repetitive tasks". If anything, in his RFC analysis, he found the opposite, in stating that Plaintiff's

impairments do not significantly limit his ability to do "many simple activities" even at the medium exertional level. [T. 23]. Plaintiff did not contest this finding.

Since this argument assumes findings that do not exist, and their absence is not appealed, the Court is not compelled to consider it further. If such findings had existed, the Court would point to <u>Burnette v. Astrue</u>. 2009 WL 863372 (E.D.N.C. 2009). There, the court confirmed that while the concepts that reduce to the descriptor "simple" (as in simple tasks) "map imprecisely" to the DOT's 3 reasoning levels, jobs with reasoning levels 1 and 2 are not inconsistent with "simple repetitive task" limitations. <u>Id</u>. at *5. So to such jobs, SSR 00-4p's edict to resolve inconsistencies would not apply.

Plaintiff next claims there is inconsistency between the "frequent" fingering and "constant" handling demands of the fast food job and what seems to be implied by the hypothetical limitation to "average use of hands". That confusion is heightened by the ALJ's amplifying the vague "average use" assumption from the hearing into the phrase in his decision, "unable to use his dominant hand for the heavy demands of work as a hairdresser". That uncertainty also applies to the janitor jobs arising under the DOT; all involve "frequent" handling, but they vary greatly in their fingering requirements. In

essence, Plaintiff claims that these inconsistencies constitute a conflict triggering application of SSR 00-4p.

Defendant argues Plaintiff should have to point out the alleged conflict at the hearing. He cites out-of-circuit cases to support this proposition. District courts in this circuit, however, had the opportunity to rule consistently with the obligation Defendant would impose, but did not do so. <u>Morse v. Astrue</u>, 2009 WL 1331099 (D.S.C.,2009); <u>Rollins v. Astrue</u>, 2009 WL 5195287 (D.S.C.,2009); <u>Novak v. Commissioner of Social Sec. Admin.</u>, 2009 WL 1922297 (D.S.C.,2009). Some went further, to specify or hold consistently with the rule that the ALJ has an affirmative duty to ask whether a conflict exists, which in essence gives the ALJ the duty to make a conflict "apparent". <u>Fisher v. Barnhart</u>, 181 Fed.Appx. 359 (4th Cir. 2006) at *7, <u>Rollins</u> at *15, <u>Hawks v. Astrue</u>, 2009 WL 3245267 at *14 (S.D.W.Va.,2009), <u>Yurek v. Astrue</u>, 2009 WL 2848859 at *9 (E.D.N.C.,2009), <u>Novak</u> at *2. These rulings seem inconsistent with the duty Defendant suggests for Plaintiff here, and the Court declines to require it. The Court will address the question whether the VE's citing jobs that the DOT indicates require "constant" handling for a person with "at best average use of the hands" limitations presents a conflict under SSR 00-4p.

The hearing transcript shows no mention of SSR 00-4p, or of the presence or resolution of any conflict between the VE evidence and the DOT. The ALJ's decision does acknowledge the Ruling in a conclusory sentence, wherein he clarifies that he only considered the VE's testimony that related to his RFC findings, and not other hypothetical limitations like the "average use of hands" referenced in the question on which Plaintiff focuses. [T. 26]

It seems clear from the history of SSR 00-4p and cases interpreting it that not every discrepancy was meant to be deemed a conflict that must be resolved. For example, courts have declined to hold definitively that a SSR 00-4p qualifying conflict is presented by a VE's failure to state a DOT code that corresponds to a job testified about (as this VE has done) or by a VE's mis-stating a DOT code that corresponds to a job. Fisher at *8. *See also,* Pryor v. Astrue, 650 F.Supp.2d 493 (W.D.Va.,2009). Those situations are not present here.

An argument could be made that there is no conflict because the ALJ was relying on the "other reliable publications" option under SSR 00-4p, since the VE testified that she "used the Bureau of Labor Statistics" [T. 766]. That, however, is undercut by the fact that the ALJ specifies in his decision that "the vocational expert's testimony was consistent with the information contained

in the Dictionary of Occupational Titles  (Social Security Ruling 00-4p)."  [T. 26].

    Novak v. Commissioner, 2009 WL 1922297 (D.S.C.,2009), is most factually similar to this case in terms of elements that may display a conflict under SSR 00-4p.  Novak at *2-3.  There, the ALJ specifically asked the VE whether his testimony was consistent with the DOT and the response was yes "except for the fact that the DOT does not address a sit/stand option".  The problem here is similar:  a substantive question about the applicability of the"average use of hands" limitation to DOT listings that invoke the more specific manipulative concepts of "handling" and "fingering".  The court in Novak found the DOT's not addressing a sit/stand option to be a conflict requiring inquiry under SSR 00-4p.  Id.

    The Court finds Novak to be persuasive, and concludes that a conflict was present, and the ALJ's failure to inquire and resolve the questions raised by the substantive distinction between the hypothesized hand use limitations and the DOT's hand use limitations in the resulting jobs is error.

    That error, however, is harmless.  At step four, the ALJ made RFC findings, detailed in part five of his decision.  [T. 24].  The ALJ did not include any hand use limitations in his RFC, and Plaintiff does not appeal the

omission of hand limitations in the RFC assessment; he only appeals how hand limitations were hypothesized in the step five analysis.

The ALJ may disregard VE testimony that does not conform with the ALJ's RFC findings. See, e.g., <u>Davis v. Shalala</u>, 31 F.3d 753, 755, 45 Soc. Sec. Rep. Serv. 316, Unempl. Ins. Rep. (CCH) ¶14205B (8th Cir. 1994). The conflict presented by the VE's testimony only relates to the limitations to "at best average use of his hands," limitations that were included in the hypothecal but not in the eventually adjudicated RFC. Since the ALJ did not rely on the VE's testimony about hand limitations, any inconsistency is harmless, not having been instrumental in the outcome.

An error that had no practical effect on the outcome of the case is not cause for reversing the Commissioner's decision. <u>DeWalt v. Astrue</u>, 2009 WL 5125208 (D.S.C.,2009), citing <u>Benskin v. Bowen</u>, 830 F.2d 878, 883 (8th Cir.1987). Substantial evidence supports the ALJ's step five finding that Plaintiff is not disabled.

## VII.   CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards and that there is substantial evidence to support the ALJ's determination that the Plaintiff has not been disabled since January 4,

2005, the date of his application, within the meaning of the Social Security Act.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 13] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**, and judgment shall issue simultaneously herewith.

**IT IS SO ORDERED.**

Signed: June 22, 2010

Martin Reidinger
United States District Judge